# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUTANNA DAWN BOWDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-437-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Jutanna Dawn Bowden requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-three years old at the time of the administrative hearing (Tr. 160). She has a tenth grade education and no past relevant work (Tr. 48, 221). The claimant alleges that she has been unable to work since an amended onset date of June 23, 2015, due to mental illness and seizures (Tr. 37, 220).

## Procedural History

On June 23, 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 10, 160-65). Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 21, 2017 (Tr. 10-22). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she could understand, remember, and sustain concentration to carry out simple, repetitive tasks with routine supervision; have occasional contact with coworkers and supervisors, but no work-related contact with the general public; adapt to a routine work setting; and needed to avoid unprotected heights and dangerous moving machinery (Tr. 15). The ALJ then concluded that the claimant was not

disabled because there was work she could perform in the national economy, *i. e.,* laundry worker and inspector/packer (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by failing to properly consider the mental health evidence prior to her alleged onset date. She asserts that such failure caused the ALJ to err when he discounted her subjective statements and when he formed the RFC. The Court agrees that the ALJ erred in formulating the RFC, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of schizoaffective disorder, borderline personality traits, methamphetamine abuse in remission, seizure disorder, post-traumatic stress disorder ("PTSD"), and hepatitis C, and the nonsevere impairment of headaches (Tr. 13). The relevant medical evidence prior to the claimant's alleged onset date reveals that she received inpatient mental health treatment at Griffin Memorial Hospital in November 2014 due to suicidal ideation and impulses to self-harm (Tr. 315-18). The claimant was stabilized on medication and discharged with diagnoses of schizoaffective disorder, amphetamine dependence, and cannabis abuse (Tr. 316-18). Thereafter, the claimant attended a follow-up appointment with Dr. William Mings at Carl Albert Community Mental Health Center ("CACMHC") on December 17, 2014, and reported that her mood continued to be unstable and that she had been out of her medications for two weeks (Tr. 405-06). Dr. Mings noted the claimant's mood and affect were depressed, anxious, and irritable (Tr. 405). The claimant did not attend further follow-up appointments at CACMHC, and was discharged on July 9, 2015, due to

noncompliance (Tr. 399-404). Additionally, the claimant was regularly treated on an outpatient basis for anxiety at Caring Hands Healthcare Center between August 2014 and March 2015 (Tr. 354-87). In May 2015, the month before the claimant's alleged onset date, she was diagnosed with anxiolytic dependence continuous use (Tr. 353).

After her alleged onset date, the claimant established care with Dr. Gerald Rana on August 5, 2015 (Tr. 518-19). Dr. Rana diagnosed the claimant with PTSD, generalized anxiety disorder, and bipolar I disorder (Tr. 519). Dr. Rana then treated the claimant for PTSD in November 2015 and February 2016 (Tr. 512-17). At follow-up appointments in August 2016, September 2016, and December 2016, the claimant reported no anxiety, depression, sadness, sleep disturbance, or suicidal thoughts (Tr. 568, 571, 589).

Dr. Kathleen Ward conducted a consultative mental status examination of the claimant on September 10, 2015, (Tr. 408-12). Dr. Ward observed that the claimant smiled and was fairly calm, cooperative, and reality-based in conversation (Tr. 410). She found some limited deficits in the claimant's social judgment and problem solving (Tr. 411). Dr. Ward also indicated that the claimant appeared to be a marginally reliable historian, noting her discussion of her cannabis use was not consistent with records that showed frequent use (Tr. 411). She diagnosed the claimant with schizoaffective disorder, borderline personality traits, and amphetamine abuse by history (Tr. 411).

In an undated letter, Karen Frampton, an LPC candidate at Lifeworks Counseling Center, indicated that the claimant has shown major depressive disorder with anxietal tendencies, difficulty gaining composure when outburst happens, and becomes combative

and destructive while threatening self-harm (Tr. 530-31). The record contains no treatment notes from Lifeworks Counseling Center.

On January 1, 2016, state agency psychologist Lisa Swisher, Ph.D. completed a Mental RFC Assessment and found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and moderately limited in six abilities, including her ability to: (i) interact with the general public, (ii) accept instructions and respond appropriately to criticism from supervisors, and (iii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 65-66). Dr. Swisher concluded that the claimant could perform simple, repetitive tasks; relate to peers and supervisors on a superficial work basis, and to a lesser degree with the general public; and adapt to a routine work setting (Tr. 66). Her findings were affirmed on review (Tr. 85-86).

At the administrative hearing, the claimant testified that her mental health symptoms included anger, hatefulness, and accusing people of doing things they did not do (Tr. 40-41). She stated that she had not experienced hallucinations recently but did experience them in the past, and that she had not cut herself since 2015 (Tr. 41). Regarding her drug abuse, the claimant said she last used methamphetamine a year and a half ago (Tr. 43). The claimant reported that she does not leave her house other than to go to the doctor because she is paranoid (Tr. 45). When asked if she could do her former job at a bait shop, the claimant stated "I'm not – I'm sure I could." (Tr. 47).

In his written opinion, the ALJ summarized the claimant's testimony and some the medical record. The ALJ gave significant weight to the state agency psychologists'

opinions, as well as Dr. Ward's opinion that the claimant could manage her own benefits (Tr. 23). He gave diminished weight to Ms. Frampton's letter, noting she was not an acceptable medical source, and that her opinion was not consistent with other treatment providers (Tr. 18). The ALJ found that the claimant's subjective statements were not consistent with the objective and other evidence because: (i) she had little treatment for her impairments, (ii) she did not seek treatment from a specialist during the relevant period, (iii) she was not always medication compliant, and (iv) she testified that she was able to return to one of her previous jobs (Tr. 6).

The claimant contends, *inter alia*, that the ALJ failed to give proper consideration to her mental impairments prior to her alleged onset date. "Evidence relating to a time outside the insured period is only minimally probative, but may be considered to the extent it illuminates a claimant's health before the expiration of h[er] insured status." *Nagle v. Commissioner of Social Security*, 191 F.3d 452, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) [unpublished table opinion]. Here, the ALJ neither noted the claimant's anxiety nor determined what effect, if any, it may have had on her RFC. The Court is thus unable to determine whether the ALJ considered this evidence or simply ignored it. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Although the ALJ was not required to find that the claimant's anxiety amounted to a severe impairment, he *was* required to account for *all* her impairments, including her documented anxiety, at step four.

*See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them."). This analysis was particularly important here because the claimant was consistently treated for anxiety through May 2015, the month before her alleged onset date, and was diagnosed with generalized anxiety disorder in August 2015, the month after her alleged onset date (Tr. 350, 519).

The Commissioner argues that the claimant's mental health evidence prior to her alleged onset date is especially lacking in probative value because the claimant admitted to abusing methamphetamines during that period of time. However, there is nothing to indicate that the ALJ disregarded any evidence of the claimant's anxiety on this basis, so the Court declines to adopt this post-hoc rationalization by the Commissioner. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC,

the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**